**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

RUSSELL P. BARTLETT,

                          Plaintiff,

          v.

LUIS A. NIEVES, et al.,

                          Defendants.

Case No. 4:15-cv-00004-SLG

<u>**ORDER RE ALL PENDING MOTIONS**</u>

Three motions are currently pending before the Court. Plaintiff Russell P. Bartlett filed a Motion for Partial Summary Judgment at Docket 38, seeking a ruling that he did not resist arrest. Defendants Luis A. Nieves and Bryce L. Weight, both Alaska State Troopers, filed a Motion for Summary Judgment at Docket 46 seeking a ruling in their favor on all counts. The third motion is Mr. Bartlett's Motion and Memorandum for Summary Judgment Regarding There Being No Probable Cause to Charge Mr. Bartlett With Resisting Arrest at Docket 60. Oral argument was not requested by any party and was not necessary to the Court's determination of these motions.

**BACKGROUND**

This case arises from an encounter between Mr. Bartlett and Defendants during an annual event called Arctic Man. The relevant facts are largely undisputed, although the parties present different interpretations of each other's conduct related to the case. Defendants describe Arctic Man as "an extreme ski event held annually in the Hoodoo Mountains near Paxson, Alaska" that features a "remote location, large crowds, and . . .

high levels of alcohol use."[1]  Mr. Bartlett does not dispute this characterization.  On April 13, 2014, the last night of Arctic Man 2014, Mr. Bartlett attended a party in the event's parking lot.[2]  Troopers Nieves and Weight were investigating underage drinking at the party.[3]

The facts when viewed in the light most favorable to Plaintiff for purposes of the pending motions[4] are as follows:

Trooper Nieves approached Mr. Bartlett while he was standing outside a motorhome (RV), tapped him on the shoulder, and asked if they could talk.[5]  Mr. Bartlett responded, "What for?"[6]  Trooper Nieves said, "You look like you're pretty interested in what was going on over there."  Mr. Bartlett stated, "I don't want to talk to you" and asked if he was free to go.  Trooper Nieves then walked away.  Shortly thereafter, at approximately 1:30 a.m., Mr. Bartlett was in the middle of a crowd and noticed that a minor he had attended the party with, M.W., was at the edge of the crowd conversing with Trooper Weight.[7]  Mr. Bartlett testified that he and a friend walked over to Trooper Weight and M.W.  Mr. Bartlett "stood at a distance from each of them as seemed appropriate to

---

[1] Docket 47 (Defendants' Mem. in Support of Mot. for Summary Judgment) at 1–2.

[2] Docket 29 (Amended Complaint) at 1.

[3] Docket 47-2 (Nieves Dec.) at 2–3.

[4] See infra, at 8-10.

[5] Docket 57-4 (Bartlett Deposition) at 4–5.

[6] Id. at 5.

[7] Docket 57-4 at 9–10.

communicate over the loud music"[8] and said, "You don't have the authority to talk to him without a parent or guardian present."[9] Trooper Weight said, "No" and pushed Mr. Bartlett backwards. Mr. Bartlett testified that at the time of the push, his "right hand had rose [] up a little bit"[10] but that his "hands rose up in reaction to Weight lunging at me/the shove."[11] Trooper Nieves approached and grabbed Mr. Bartlett's left arm and started yelling, "Back up." Trooper Weight then walked up and grabbed Mr. Bartlett's right arm. Both officers repeatedly yelled at Mr. Bartlett, "Get on the ground."[12] The troopers tried to force Mr. Bartlett to the ground; he hesitated so as to not aggravate an earlier back injury.[13] The troopers threatened Mr. Bartlett with a Taser; then he "went prone on [his] stomach and voluntarily placed [his] hands behind his back."[14]

Mr. Bartlett was placed in a trooper vehicle; he asked what was going on. Trooper Nieves said, "You're going to jail."[15] When Mr. Bartlett asked why, Trooper Nieves said, "For harassing my trooper." Mr. Bartlett asserts that Trooper Nieves then said, "Bet you wish you would have talked to me now."[16] In the jail tent at Arctic Man, Mr. Bartlett asked

---

[8] Docket 57-13 (Bartlett Aff.) at 1.

[9] Docket 57-4 at 11.

[10] Docket 57-4 at 14.

[11] Docket 57-13 at 2.

[12] Docket 57-4 at 12–13.

[13] Docket 47-7 at 8.

[14] Docket 57-13 at 2.

[15] Docket 57-4 at 17.

[16] Docket 57-4 at 17.

to have his handcuffs loosened, and they were loosened immediately.[17]  Mr. Bartlett did

not suffer any physical injuries as a result of his arrest.[18]

Troopers Weight and Nieves then drafted a police report of the incident, which Mr.

Bartlett asserts was fabricated in that it contains many false statements.[19]  In that report,

Trooper Weight characterized Mr. Bartlett as "hostile and aggressive," and "combative in

nature."[20]  Trooper Weight also wrote that Mr. Bartlett "attempted to 'head-butt' [Trooper]

Nieves, but was unsuccessful."[21]  Trooper Nieves wrote that Mr. Bartlett had shouted at

the RV occupants that they did not have to speak with the trooper or allow him inside the

RV.  Trooper Nieves also wrote that after Trooper Weight pushed Mr. Bartlett away, "I

immediately grabbed a hold of Bartlett and advised him he was under arrest for disorderly

conduct.  Bartlett clenched his right fist as I grabbed his left arm, shouting no.  I advised

him again that he was under arrest, as he pulled away from me, as he swung his right fist

towards me."[22]  Mr. Bartlett asserts that he "did not charge at Weight or Nieves, nor did

[he] attempt to throw any punches or to head-butt anyone.  At no time did [he] attempt to

harm Weight or Nieves, and the whole incident occurred in a matter of seconds."[23]

The parties have submitted several copies of a local television news video of the

_____

[17] Docket 47-7 at 5.

[18] Docket 47-7 at 11.

[19] Docket 29 (Amended Complaint) at 2.

[20] Docket 7-1 (Incident Report) at 3.

[21] *Id.* at 4.

[22] *Id.*

[23] Docket 57-13 at 2–3.

incident, including an enhanced video showing a high resolution depiction of the key interaction between Mr. Bartlett and the troopers.[24]   Certain aspects of the video are indeed susceptible to more than one interpretation, as the parties have demonstrated in their briefing.   But other aspects are indisputable, and are, in fact, undisputed.[25]   The enhanced video indisputably shows Trooper Weight, Mr. Bartlett, and the minor standing very close together exchanging words.   Trooper Weight and Mr. Bartlett are face to face, with Trooper Weight on the left of the screen, Mr. Bartlett on the right, and the minor in the center with his back to the camera.   In the video, the minor is standing in a position that obscures the closest point of contact between Trooper Weight and Mr. Bartlett, but the enhanced video reveals that at the time of the push, Mr. Bartlett's right hand was at roughly shoulder height within inches of Trooper Weight's face.   Trooper Nieves approaches from the right with his back to the camera.   Mr. Bartlett falls backwards as Trooper Nieves reaches him and grabs his left arm.   As Trooper Nieves and Mr. Bartlett move to the right side of the screen, Mr. Bartlett's right arm swings back, extended, then comes forward as Trooper Nieves maneuvers behind Mr. Bartlett.   Trooper Weight approaches from the left and secures Mr. Bartlett's right arm.   Trooper Weight does a leg sweep on Mr. Bartlett's right leg that brings Mr. Bartlett down on one knee.[26]   Mr. Bartlett then goes down on his hands and knees as the troopers continue to try to get him all the way to the ground.   Mr. Bartlett appears to submit to the takedown when the troopers tell

---

[24] Docket 1, Ex. A (News Story Video); Docket 47-9 (Enhanced Video).

[25] *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (authorizing courts to consider video evidence at summary judgment).

[26] *See* Docket 65, Ex. AD (Frame-by-Frame PDF of Video).

him he is going to "get tased."  The troopers then arrest Mr. Bartlett and tell him he is going to jail for harassment.  Mr. Bartlett also submitted an audio recording from another officer on the scene, in which the arrest seems to be reported as for disorderly conduct and "challenging a Trooper to a fight."[27]

On April 14, 2014, Mr. Bartlett was charged with disorderly conduct and resisting or interfering with arrest.[28]  During discovery, two attendees of the party who were inside the RV each testified that they did not hear Mr. Bartlett shout at anyone inside the RV.[29] Trooper Nieves testified at his deposition that he was assigned to have the news crew ride with him, that "they placed a [wireless] mic on me," and that the TV crew was with him when he arrived at the party but he did not know if the incident was recorded.[30]  On May 5, 2014, Mr. Bartlett requested discovery in his criminal case from the State of Alaska of any tape or videotape recordings taken at the scene.[31]  On May 29, 2014, a paralegal from the District Attorney's office emailed Trooper Weight, inquiring whether he had any audio recordings of the incident.[32]  Trooper Weight responded on May 30, 2014 that he did not have any audio of the incident because it "escalated very quickly and I did not have the opportunity to start my audio, prior to having to go hands on and effecting the

---

[27] Docket 57-17 (Audio of Officer Minor).

[28] Docket 7-2 (Criminal Complaint).

[29] Docket 57-9 (Deposition of Jerry Sadler, Jr.); 57-10 (Aff. of Sierra Contento).

[30] Docket 57-5 (Deposition of Trooper Nieves) at 9–14.

[31] Docket 57 at 14.  *See also* Docket 57-19 at 1–2 (Request for Discovery).

[32] Docket 57-19 at 3 (District Attorney's Office Email).

arrest."[33]  On July 16, 2014, Mr. Bartlett's attorney sent a letter to Assistant District Attorney Raymond Beard that indicated that "there may have been an individual on the scene" who videotaped the events and requested the name, addresses, and phone numbers of any such individual.[34]  On July 17, 2014, the District Attorney's office emailed the troopers regarding the request.[35]  Trooper Nieves responded on the same day, reporting that there may be video from "Channel 2 perhaps.  Nothing in our possession or under our control."[36]  On August 12, 2014, Mr. Beard reported to Mr. Bartlett's attorney, "I do not know whether some private person videotaped the incident.  I would certainly want to view any such video if it exists, and the State would provide that evidence to you if it were in our possession, but is [sic] not.  If you are able to locate such a recording, I would greatly appreciate the opportunity to inspect and copy."[37]  Mr. Bartlett asserts that on or about October 1, 2014, he located a KTVA news video of the incident.[38]  Mr. Beard had reviewed the video by December 1, 2014.[39]

The State declined Mr. Bartlett's December 2014 and January 2015 requests to dismiss the criminal case.  However, on February 4, 2015, the State dismissed the

---

[33] Docket 57-19 at 4 (Email between Trooper Weight and District Attorney's Office).

[34] Docket 57-19 at 5 (Letter).

[35] Docket 57-19 at 6 (District Attorney's Office Email).

[36] Docket 57-19 at 7 (Nieves Email).

[37] Docket 57-19 at 9 (Beard Email).

[38] Docket 57 at 14.  *See also* Docket 57-19 at 10 (Bartlett Email).

[39] Docket 57-19 at 11 (Beard Email).

charges against Mr. Bartlett.[40]

Mr. Bartlett initiated this action on March 2, 2015.[41] Mr. Bartlett's Amended Complaint raises claims under 42 U.S.C. § 1983 for violation of his constitutional rights "to be free from unlawful assault by a police officer, to be free from a malicious criminal prosecution, to not be falsely incarcerated, unreasonable search and seizure, freedom of speech, equal protection of the law and his right to due process."[42] Mr. Bartlett also alleges a conspiracy claim under 42 U.S.C. § 1985.[43]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1343(a)(3) and 1331 because Mr. Bartlett alleges violations of his federal constitutional rights.

### II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[44] If the moving party meets this burden, the non-moving party must present specific factual evidence

---

[40] Docket 7-3 (Dismissal).

[41] Docket 1 (Complaint).

[42] Docket 29 at 4.

[43] *Id.*

[44] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

demonstrating the existence of a genuine issue of fact.[45] The non-moving party may not rely on mere allegations or denials. He must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[46]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[47] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[48] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[49]

## III. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[50] The purpose of qualified immunity is to "balance[] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

---

[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[46] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[47] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[48] *Id.* at 248.

[49] *Anderson*, 477 U.S. at 249.

[50] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

harassment, distraction, and liability when they perform their duties reasonably."[51] Qualified immunity is a question of law, not a question of fact.[52] And because qualified immunity is immunity from suit, not just from liability, "[i]mmunity ordinarily should be decided by the court long before trial."[53]

Government officials are not entitled to qualified immunity on summary judgment if (1) the facts taken in the light most favorable to the plaintiff show that the officials' conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[54] Both prongs of the analysis must be satisfied, so that if a court determines that one prong is not met, qualified immunity applies. A court may consider either prong first.[55]

For a constitutional right to be clearly established, its contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates

---

[51] *Pearson*, 555 U.S. at 231.

[52] *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

[53] *Sjurset v. Button*, 810 F.3d 609, 617 (9th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

[54] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from by Pearson*, 555 U.S. at 232–36. The Court notes that recent Supreme Court cases seem to merge these two prongs, and it may be that the law on qualified immunity is evolving. *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231, but omitting the two-prong configuration). However, the Ninth Circuit thus far applies the two-prong approach. *See Garcia v. Cty. of Riverside*, 817 F.3d 635, 639 (9th Cir. 2016). In any event, the outcome of this case is the same regardless of how the qualified immunity test is stated.

[55] *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

that right."[56] Courts should not define clearly established law at a high level of generality; otherwise, qualified immunity becomes no immunity at all if the only prerequisite is a constitutional violation.[57] Put simply, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[58]

## IV. False Arrest and False Imprisonment

Mr. Bartlett alleges that he was falsely arrested and imprisoned in violation of his federal constitutional rights.

"It is well established that an arrest without probable cause violates the Fourth Amendment."[59] "Under the Fourth Amendment, [probable cause] exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."[60] In this inquiry, "the ultimate touchstone . . . is 'reasonableness.'"[61] "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them

---

[56] *Ashcroft v. al-Kidd*, 536 U.S. 731, 741 (2011) (internal quotation marks removed).

[57] *Id.* at 2084.

[58] *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 743).

[59] *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quotation marks and citation omitted).

[60] *Sialoi v. City of San Diego*, --- F.3d ----, No. 14-55387, 2016 WL 2996138, at *5 (9th Cir. May 24, 2016) (citation omitted).

[61] *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (quoting *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)).

'fair leeway for enforcing the law in the community's protection.'"[62]  If "it was reasonable for an officer to suspect that the defendant's conduct was illegal," then "there was no violation of the Fourth Amendment."[63]  The standard is objective, and so "[w]e do not examine the subjective understanding of the particular officer involved."[64]

Moreover, an officer who makes an arrest without probable cause may still be entitled to qualified immunity if it was "*reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest."[65]  Applied to this case, if reasonable officers could disagree about the legality of Mr. Bartlett's arrest, the troopers would be entitled to qualified immunity even if Mr. Bartlett was arrested without probable cause in violation of the Fourth Amendment.

At the time of the incident, Defendants told Mr. Bartlett he was being arrested for harassment.  Under Alaska law, a person commits "harassment in the second degree if, with intent to harass or annoy another person, that person . . . insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response."[66]  Defendants assert that "[a] prudent police officer could believe that probable cause existed that Bartlett had committed harassment because he intended to annoy Trooper Weight by challenging or taunting him to stop speaking with the minor through

---

[62] *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

[63] *Heien*, 135 S. Ct. at 539.

[64] *Id. See also Tatum v. City and Cty. of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006) ("Under *Devenpeck*, the subjective reason that [the officer] arrested [the defendant] is irrelevant so long as the available facts suggested that [defendant] was committing a crime.").

[65] *Rosenbaum*, 663 F.3d at 1076 (citation omitted) (emphasis in original).

[66] AS 11.61.120(a)(1).

his demands, his loud voice, and his close physical presence."[67]  Mr. Bartlett responds

that he spoke loudly only to be heard over the loud music and that his "right hand was

never raised toward Weight in a threatening manner."[68]  Mr. Bartlett "testified that his right

hand rose only in reaction to Weight's shove but that before being shoved, his right hand

was close to his hip."[69]  Mr. Bartlett maintains that "[r]easonable jurors could conclude

that no probable or arguable probable cause existed to arrest Bartlett" for harassment

because (1) a jury must resolve whether Bartlett's conduct was threatening, and (2) "[j]ust

because Weight and Nieves responded violently to Bartlett's speech does not mean that

reasonable Alaskan police officers confronting the same situation would have so acted."[70]

Plaintiff acknowledges that Mr. Bartlett caused the troopers to "respond violently"

to him—an element of harassment.  And, viewing all the facts in the light most favorable

to Mr. Bartlett, i.e. that Mr. Bartlett did not intend to threaten Trooper Weight and his hand

gesture occurred because of the shove—Mr. Bartlett's gesture as depicted in the video

could nonetheless be interpreted by a reasonable officer as a challenge or taunt sufficient

to support probable cause to arrest Mr. Bartlett for harassment.[71]  Particularly given the

troopers' heightened challenges while investigating underage drinking at 1:30 a.m. at a

---

[67] Docket 47 at 17.

[68] Docket 57 at 7–8.

[69] Docket 57 at 8.  *See also*, Docket 57-4 (Deposition of Bartlett) at 14–15.

[70] Docket 57 at 25.

[71] In his opposition to Defendants' summary judgment motion, Plaintiff indicates that the officers had perceived Mr. Bartlett's actions as "a taunt that [Defendants] could not leave unpunished . . . ."  Docket 57 at 32.

crowded, large, remote event like Arctic Man, a reasonable officer could interpret a loud person acting as depicted in the videos as having committed harassment as defined in AS 11.61.120. Thus, based on Mr. Bartlett's description of the facts and the video, because a reasonable officer could suspect that Mr. Bartlett's conduct was illegal harassment, there was no Fourth Amendment violation. Accordingly, Defendants are entitled to summary judgment on Mr. Bartlett's false arrest and false imprisonment claims.

Moreover, even if there was no probable cause for the arrest, it is reasonably arguable that there was probable cause to find that the crime of harassment had occurred, and reasonable officers could disagree about the legality of the arrest. Stated differently, Mr. Bartlett has not demonstrated that clearly established law prohibited the troopers from considering his conduct threatening enough to constitute probable cause that the crime of harassment had occurred so as to justify the arrest.[72] Accordingly, Defendants are entitled to qualified immunity on Mr. Bartlett's false arrest and false imprisonment claims.

In light of the foregoing, the Court will deny as moot: (1) Mr. Bartlett's Motion for Partial Summary Judgment at Docket 38, which is focused on whether Mr. Bartlett resisted arrest under Alaska law, and (2) Mr. Bartlett's Motion for Summary Judgment Regarding There Being No Probable Cause to Charge Mr. Bartlett With Resisting Arrest at Docket 60.

## IV.    Malicious Prosecution

Mr. Bartlett maintains that his malicious prosecution § 1983 claim should survive

---

[72] Having found that probable cause existed to arrest Mr. Bartlett for harassment, the Court does not address whether probable cause also existed to arrest Mr. Bartlett for disorderly conduct, assault, and/or resisting arrest.

summary judgment under two alternative theories. First, he asserts he has "a liberty interest under the Fourteenth Amendment to be free 'from criminal charges premised on fabricated evidence'"; second, he maintains that "pretrial limitations on a defendant's liberty may amount to a seizure within the meaning of the Fourth Amendment."[73] Mr. Bartlett acknowledges that his second theory is dependent upon his right to be free from false arrest and unreasonable seizures, as to which the Court has granted summary judgment to Defendants, above. Thus, the remaining malicious prosecution issue is whether Defendants are entitled to summary judgment on Mr. Bartlett's claim to be free from prosecution from criminal charges premised on fabricated evidence.[74]

Mr. Bartlett maintains that the troopers' initial report was fabricated because contrary to what is set out in that report: (1) he was never told he was under arrest; (2) he did not slur his speech; (3) he did not head-butt anyone; (4) he did not shout at the RV occupants; (5) he did not charge up to Trooper Weight or position himself between the trooper and the minor; (6) he did not come after Trooper Weight after the shove; and (7) he was not highly intoxicated.[75]

The Ninth Circuit has recognized "there is a clearly established constitutional due

---

[73] Docket 57 at 37–38.

[74] Mr. Bartlett did not plead a state law malicious prosecution claim in his Amended Complaint. *See* Docket 29 at 4. But both parties address such a claim in their summary judgment briefing. *See* Docket 47 (Motion) at 37; Docket 57 (Opp.) at 40–42. Under Alaska law, the elements of a malicious prosecution cause of action are (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; and (4) "malice" or a primary purpose other than that of bringing an offender to justice. *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007). If Mr. Bartlett did intend to assert a state law malicious prosecution claim, it would fail based on the Court's ruling, *supra*, that there was probable cause for his arrest.

[75] Docket 57 at 39–40.

process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[76]  However, as a general rule, and even when evidence has been fabricated by investigating officers, the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time."[77]  But a plaintiff may rebut this presumption by showing that the prosecuting attorney was "pressured or caused by the investigating officers to act contrary to his independent judgment."[78]

Mr. Bartlett maintains that he has rebutted the presumption of prosecutorial independence.  He cites to *Newman v. County of Orange* for the proposition that the presumption of prosecutorial independence may be rebutted when a prosecutor "based the decision to prosecute solely on the information contained in the officers' report, but the plaintiffs highlighted striking omissions in those reports as well as the fact that the officers themselves offered conflicting stories."[79]  Mr. Bartlett asserts that in his case, Mr.

---

[76] *Devereaux v. Abbey*, 263 F.3d 1070, 1075–76 (9th Cir. 2001).

[77] *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008) (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008)).

[78] *Harper,* 533 F. 3d at 1027.  In *Harper*, evidence sufficient to rebut the presumption included: (1) the jury heard unrebutted testimony that the District Attorney worked "hand-in-hand" with the police including "ongoing daily interactions;" (2) there was "substantial evidence that the Task Force improperly exerted pressure on the District Attorney's office and failed to turn over evidence; and (3) the police "hounded" prosecutors to file charges and "intentionally hampered the investigation."  *Id.* at 1027–28.

[79] Docket 57 at 39.  *See Newman v. Cty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006).

Beard prosecuted the case "solely on the charging documents and submitted evidence" from Defendants, which "grossly mischaracterized" the incident.[80] He asserts that the video corroborates his version of events. Mr. Bartlett also asserts that Trooper Nieves "deliberately withheld his knowledge of the video footage because it directly contradicted his version of the altercation."[81]

Defendants cite to Ninth Circuit precedent holding that even in a case in which evidence has been fabricated, such evidence cannot form the basis of a malicious prosecution claim if that evidence only "had the potential to, but did not, impinge on plaintiffs' constitutionally protected rights" and independent reasons supported a finding of probable cause.[82] And in this case, the attorney testified that "[t]o my knowledge the troopers involved in Bartlett's arrest did not withhold any material information from me. The KTVA video confirmed the troopers' versions of the contact with Bartlett, which was further solidified by the enhanced video I obtained."[83]

Here, there is simply no evidence that the troopers pressured the prosecuting attorney or caused him to act contrary to his own independent judgment. To the contrary, the evidence shows that the attorney conducted his own investigation when he independently sought out the videotape. Moreover, the evidence is undisputed that when

---

[80] Docket 57 at 39–40.

[81] Docket 57 at 41.

[82] Docket 62 at 18. *See Hennick v. Bowling*, 115 F. Supp. 2d 1204, 1208–09 (W.D. Wash 2000) (citing *Tomer v. Gates*, 811 F.2d 1240, 1242 (9th Cir. 1987)) ("where the fabricated evidence did not result in a deprivation of a liberty or property interest, there having been independent reasons to find probable cause for plaintiff's arrest, plaintiff failed to identify the required violation of a constitutional right").

[83] Docket 47-11 (Aff. of Beard) at 6.

the prosecuting attorney independently sought out the possible existence of media video footage, Trooper Nieves promptly suggested a possible source. In sum, Mr. Bartlett has presented only a speculative theory that the troopers manipulated the prosecuting attorney, which the attorney himself refutes.[84] This is not enough to sustain a malicious prosecution claim on a theory of fabricated evidence or rebut the presumption of prosecutorial independence. And if Mr. Bartlett is maintaining that the investigation conducted by the troopers was inadequate, § 1983 does not provide a remedy because an inadequate investigation does not violate federal constitutional or statutory law.[85] Defendants are entitled to summary judgment on Mr. Bartlett's malicious prosecution claim.

## V. Excessive Force

Mr. Bartlett alleges that Defendants used constitutionally excessive force against him when he was shoved, tackled to the ground, and handcuffed too tightly.

In *Graham v. Connor*, the Supreme Court held that in assessing the force used during an arrest, "the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." [86]  Factors to consider include the

---

[84] Docket 62-8 (Transcript of Beard Deposition) at 51.

[85] *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Hageman v. Bates*, No. CV-06-09 MDWM, CV-06-45 MDWM, 2007 WL 927584, at *1 (D. Mont. Mar. 23, 2007) ("Even if Plaintiffs could establish that the investigation conducted by law enforcement officers was inadequate, § 1983 does not provide a remedy because an inadequate investigation does not violate federal constitutional or statutory law.").

[86] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation marks and citations omitted); *see*

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Reasonableness remains the touchstone, judged objectively from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[87] "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."[88] "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[89] And even if a court assumes a constitutional violation may have occurred, qualified immunity still applies unless it is clearly established that a reasonable officer would understand that the force in question was unlawful.[90]

Mr. Bartlett asserts that his case is similar to *Blankenhorn v. City of Orange.*[91] Mr. Blankenhorn was suspected of trespassing at a shopping mall from which he had been banned. He asserted that when he attempted to yank himself out of an officer's grasp, the officer threatened him with mace. Other officers arrived on the scene and interpreted Blankenhorn's admittedly angry, loud, and profane conduct as threatening. A video of

---

*also C.V. by and through Villegas v. City of Anaheim*, --- F.3d ----, No. 14-55760, 2016 WL 3007106, at *3 (9th Cir. May 25, 2016).

[87] *Id.*

[88] *Id.* (citation omitted).

[89] *Id.* at 397.

[90] *Id.*

[91] Docket 57 at 33; *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

the scene showed Blankenhorn "gesture several times by raising his arms above his head and touching his chest."[92] Blankenhorn said, "I'm not going to my f***ing knees" and asserted that three officers immediately jumped on him. There were several seconds of struggle before the officers took Blankenhorn down, handcuffed him, and secured his wrists and ankles. Blankenhorn maintained that during the struggle one of the officers punched him several times and his face was pressed to the ground by a knee behind his neck. A video confirmed that an officer had punched Blankenhorn after he was already on the ground.[93]

The Ninth Circuit identified several material factual disputes, including whether Blankenhorn had identified himself as a gang member and had resisted being handcuffed. Accordingly, the Court held that "[w]here such disputes exist, summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party."[94] The *Blankenhorn* Court then turned to whether the rights at issue were clearly established such that qualified immunity should apply. Applying a "fair notice" standard, the *Blankenhorn* Court held that the "state of the law was 'clearly established' at the time of Blankenhorn's arrest and gave the arresting officers sufficiently fair notice that their conduct could have been unconstitutional."[95] The Ninth Court also

---

[92] *Blankenhorn*, 485 F.3d at 469.

[93] *Blankenhorn*, 485 F.3d at 469–70.

[94] *Blankenhorn*, 485 F.3d at 477.

[95] *Blankenhorn*, 485 F.3d at 481 (formatting and quotation marks omitted). The Ninth Circuit's use of the phrase "could have been unconstitutional" in *Blankenhorn* may not be in conformance with current Supreme Court precedent. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), a decision issued four years after *Blankenhorn*, the Supreme Court explained that "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or

held that an individual "has the limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic . . . . triggered . . . by the officer's bad faith or provocative conduct."[96]

Plaintiff asserts that like Mr. Blankenhorn, Mr. Bartlett was charged with misdemeanors and did not pose a threat to officers or others.[97] He asserts that "[t]o the extent Bartlett did resist the assault from Weight and Nieves, a reasonable jury could find that their conduct was provocative because it came without warning, and no attempt was made to handcuff Bartlett before taking him roughly to the ground."[98] Mr. Bartlett asserts that "a reasonable jury could find that Weight and Nieves used constitutionally unacceptable force under the circumstances" and that "[t]he constitutional right not to be gang-tackled by police officers without warning was clearly established at the time Bartlett was arrested [such that] neither [Weight nor Nieves] could have reasonably believed their shove and concerted takedown of Bartlett was lawful."[99]

With regard to the shove by Trooper Weight, Defendants cite *Jackson v. City of Bremerton*, in which the Ninth Circuit found no Fourth Amendment violation where a woman "ran to interfere" with police officers attempting to control a "melee" at a park.[100]

---

constitutional question beyond debate"; *see also Mullenix*, 136 S. Ct. at 308 (excessive force); *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (speech-related retaliatory arrest).

[96] *Blankenhorn*, 485 F.3d at 479 (quoting *United States v. Span*, 970 F.2d 573, 580 (9th Cir. 1992)). *But see Graham*, 490 U.S. at 397 (holding that reasonableness inquiry in an excessive force case is objective, without regard to the officers' underlying intent or motivation).

[97] Docket 57 at 35.

[98] *Id.*

[99] Docket 57 at 36.

[100] 268 F.3d 646, 650 (9th Cir. 2001). Defendants also cite to *Scott v. Henrich*, 39 F. 3d 912, 915

An officer sprayed the woman with a chemical irritant, arrested her for failure to leave, allegedly pushed her part way to the ground, placed his knee on her back, handcuffed her, and locked her in a closed vehicle in 90 degree weather. The woman contended that the handcuffing resulted in permanent damage to a finger. The Circuit Court affirmed the district court's grant of summary judgment in favor of the officers because "no Fourth Amendment violation occurred."[101] The appellate court held that "the nature and quality of the alleged intrusions [by the officers] were minimal" and the woman's "interference posed an immediate threat to the officers' personal safety and ability to control the group."[102]

Defendants contend that Mr. Bartlett's conduct was similar to the woman's conduct in *Jackson*, such that Trooper Weight's contact "is exactly the type of 'push or shove' that does not violate the Fourth Amendment."[103] Defendants also assert that Mr. Bartlett has failed "to cite even a single case that holds that a police officer's open-palmed push violates the constitution."[104]

With regard to the takedown, Defendants assert it "was well within constitutional

---

(9th Cir. 1994), in which the Ninth Circuit held that "[o]fficers . . . need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."[100] Defendants assert that "[b]ecause Bartlett was so close to Trooper Weight, the trooper could not timely react if Bartlett assaulted him." Docket 47 at 28.

[101] *Jackson*, 268 F.3d at 653.

[102] *Id.* at 652–53.

[103] Docket 47 at 29.

[104] Docket 62 at 14.

bounds."[105]  Defendants maintain that the facts of this case are dissimilar to *Blankenhorn*

because Troopers Weight and Nieves did not "gang-tackle" Mr. Bartlett, punch him, or

place a knee on his neck.   Rather, Defendants assert that the troopers executed a

"controlled takedown (i.e., a takedown executed so as to produce only minimal injury)."[106]

And Defendants maintain that Mr. Bartlett's "lack of injury signals that the force used was

reasonable."[107]  Defendants also cite *Jackson v. City of Bremerton* for the proposition that

even if a constitutional violation occurred, "qualified immunity is appropriate for tense

circumstances in which officers must make on-the-spot judgment calls."[108]

With regard to Mr. Bartlett's tight handcuff claim, Defendants cite *Hupp v. City of

Walnut Creek*, in which a district court summarized Ninth Circuit precedent on such claims

to conclude that absent "a physical manifestation of injury or of a complaint about tight

handcuffs that was ignored," the officers in that case were entitled to summary judgment

on a similar claim.[109]

---

[105] Docket 62 at 16.

[106] Docket 47 at 33.

[107] Docket 47 at 35.  *See, e.g.*, *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) (de minimis use of force or injury is insufficient to support a finding of a constitutional violation).

[108] Docket 47 at 34.  *See Jackson*, 268 F.3d at 652 (citing *Graham*, 490 U.S. at 396–97) ("[T]he court's consideration of 'reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'").

[109] 389 F. Supp. 2d 1229, 1232–33 (N.D. Cal. 2005).

> In cases where the Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, plaintiffs either were demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers. *See e.g.*, *Wall v. County of Orange*, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (doctor testified arrestee suffered nerve damage); *LaLonde v. County of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee

The Court finds here, when considering the first *Graham* factor—the severity of the crime at issue—Mr. Bartlett's potential crime appears in hindsight to be de minimis. But under the second factor—whether the suspect poses an immediate threat to the safety of the officer or others—in light of the circumstances presented at an event like Arctic Man at 1:30 in the morning and Mr. Bartlett's alleged interference with an investigation, no reasonable jury could find that Trooper Weight acted unreasonably when he sought to increase the distance between himself and Mr. Bartlett, and shoved Mr. Bartlett in a way that did nothing more than that: Mr. Bartlett did not fall down and was not injured. Likewise, with respect to the tackle and takedown, and viewing the facts in the light most favorable to Mr. Bartlett, no reasonable jury could conclude the amount of force used was constitutionally excessive. As to the handcuffs, Mr. Bartlett's testimony was that they were immediately loosened when he brought his discomfort to someone's attention without any need for medical treatment. Given the controlling case law, the facts as Mr. Bartlett recounts them are insufficient to raise a genuine issue of fact such that no reasonable jury could conclude that an unconstitutionally excessive use of force occurred.

Moreover, even if the Court assumes a constitutional violation occurred, Defendants have cited to a number of cases in which more force was applied without a constitutional violation, which Mr. Bartlett has not responded with other existing precedent that puts the constitutionality of the amount of force used in his case beyond debate.[110]

---

complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (arrestee's wrists were discolored and officer ignored his complaint).

[110] *See al-Kidd*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *see also Mullenix*, 136 S. Ct. at 308 (same in excessive force context); *Reichle*, 132 S. Ct. at 2093 (same

Accordingly, it is not clearly established that in the context of a crowded event like Arctic Man, at 1:30 a.m., an officer may not increase the distance between the officer and one who challenges the officer's authority with a shove, or that an officer may not force an arrestee to the ground using an amount of force that causes no injury. Accordingly, Defendants are entitled to qualified immunity on Mr. Bartlett's excessive force claims.

## VI.    First Amendment

Criticism of the police is not a crime, and even obscene gestures and words directed towards police officers, without more, will not support probable cause to arrest.[111] But the Supreme Court has observed that "[t]his court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause."[112]

Mr. Bartlett's First Amendment claim arises from his belief that his arrest was "motivated purely by a desire to retaliate against a verbal challenge to an officer's authority."[113] Mr. Bartlett opines that Trooper Nieves "interpreted Bartlett's earlier refusal to speak with him as a challenge to his authority; that Nieves then rushed over to Bartlett in retaliatory anger; that Weight shoved Bartlett simply for speaking his mind; and that both men then assaulted Bartlett to vindicate what they perceived as a challenge to their

---

in speech-related retaliatory arrest context).

[111] *See Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1377–78 (9th Cir. 1990).

[112] *Reichle*, 132 S. Ct. at 2093. The Ninth Circuit has also recently confirmed that the "absence of probable cause must be pleaded and proven to support action against criminal investigators for inducing retaliatory prosecution." *Rodriguez v. City of Stockton*, --- Fed. Appx. ----, No. 12-15676, 2016 WL 1085260, at *1 (9th Cir. Mar. 21, 2016).

[113] Docket 57 at 30 (quotation marks omitted).

authority, a taunt that they could not leave unpunished in front of several onlookers and a rolling video camera."[114]  Mr. Bartlett asserts that after his arrest, Trooper Nieves told him, "Bet you wish you would have talked to me now."[115]

Defendants assert that the "[t]roopers arrested Bartlett based on his physical act of confronting Trooper Weight, interfering with an ongoing investigation, and for putting Trooper Weight in fear of assault."[116]  Defendants cite *Arias v. Amador* in which a district court found that "when a person's words go 'beyond verbal criticism, into the realm of interference with [an officer's performance of his or her] duty,' the First Amendment does not preclude criminal punishment."[117]

Because the Court has found that the troopers had probable cause to arrest Mr. Bartlett for harassment, Mr. Bartlett has not met the requirements necessary to support his First Amendment claim.  Construing all the facts in Mr. Bartlett's favor, even if Mr. Bartlett's speech motivated the troopers' actions, they still had probable cause to arrest Mr. Bartlett for the crime of harassment.[118]  Accordingly, Mr. Bartlett may not maintain a First Amendment cause of action and the troopers are entitled to summary judgment on this claim.

---

[114] Docket 57 at 32.

[115] Docket 57 at 32.

[116] Docket 47 at 22.

[117] 61 F. Supp. 3d 960, 972 (E.D. Cal. 2014) (brackets in original) (quoting *People v. Lacefield*, 157 Cal. App. 4th 249, 261 (Cal. App. 2007)).

[118] *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

## VI. Fourteenth Amendment

Mr. Bartlett's Fourteenth Amendment claim relates to the troopers' failure to collect and preserve the KTVA video footage.[119] The Ninth Circuit has held in a § 1983 action that an officers' failure to disclose exculpatory evidence may violate an arrestee's right to due process when it leads to the lengthy detention of an innocent person.[120] But here, there is no evidence that media footage was withheld or concealed from the prosecutor; the media footage has in fact been obtained; the media footage is not exculpatory as explained by the Court's rulings in this order; and Mr. Bartlett was not subjected to a lengthy detention. Accordingly, Defendants are entitled to summary judgment on Mr. Bartlett's Fourteenth Amendment claim.

## VII. Conspiracy

Mr. Bartlett has asserted a conspiracy claim under 42 U.S.C. § 1985. He did not specify under which provision of § 1985 he intended to bring this claim, but he asserts that Defendants conspired to deprive him of "the due course of justice" with "intent to deny him equal protection of the law and/or injure him for attempting to protect the lawful/constitutional rights of another," which could constitute a claim under § 1985(2). The equal protection language of this provision, like that in §1985(3), "require[s] an allegation of class-based animus," which has not been plead.[121] Also, "[t]he insufficiency of [the] allegations to support a section 1983 violation precludes a conspiracy claim

---

[119] Docket 57 at 44.

[120] *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014).

[121] *Bretz v. Kelman*, 773 F.2d 1026, 1030 (9th Cir. 1985) (en banc).

predicated upon the same allegations."[122]  For these reasons, summary judgment in favor of Defendants is warranted on Mr. Bartlett's conspiracy claim.

## VII.    Conclusion

In light of the foregoing, IT IS ORDERED that Mr. Bartlett's Motion for Partial Summary Judgment at Docket 38 and his Motion for Summary Judgment Regarding Probable Cause at Docket 60 are DENIED as moot.  Defendants' Motion for Summary Judgment at Docket 46 is GRANTED.  This action is DISMISSED with prejudice.  The Clerk of Court is directed to enter judgment for Defendants Luis A. Nieves and Bryce L. Weight.  The trial and all associated pretrial deadlines are VACATED.

DATED this 7th day of July, 2016 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[122] *Cassettari v. Nev. Cty., Cal.*, 824 F.2d 735 (9th Cir. 1987).